

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

July 28, 1965

Honorable Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. C-472

Re: Construction of the term
"commercial hotel, motel,
or other commercial lodg-
ing establishment" within
the meaning of Section 15
of Article V of the General
Appropriation Act of the
Dear Mr. Calvert:          59th Legislature.

Your request for an opinion on the above subject matter
asks the following questions, in view of the provisions of
paragraph a of Section 15 of the General Appropriation Act
of the 59th Legislature:

"Please advise what rate of per diem
should be allowed under the following con-
ditions?

"1. Military property auditors of the
Adjutant General's Department while travel-
ing to Houston, San Antonio, Dallas and El
Paso stay at the respective military bases -
Ellington Air Force Base, Lackland Air Force
Base, Grand Prairie Naval Air Station and
Fort Bliss. These auditors are charged a
small rate per night by these installations
for their lodging.

"2. State employees quite often in
traveling to educational and eleemosynary
institutions in the performance of their
duties obtain lodging at the institutions
visited, for which a charge is made for
quarters.

"Please define for me the term commercial hotel, motel and other commercial lodging establishments."

Paragraph a of Section 15 of Article V of the General Appropriation Act of the 59th Legislature provides:

"Rates of allowance. Each employee traveling on State business inside the boundaries of the State of Texas shall be allowed, in lieu of actual expenses incurred for meals and lodging, a flat per diem rate of not to exceed twelve dollars ($12) provided there is attached to his expense account when submitted a "Paid" bill or receipt from a commercial hotel, motel, or other commercial lodging establishment for his lodging, but provided further that if such receipt is not submitted, the flat per diem rate shall not exceed seven dollars ($7)."

Article 4596, Revised Civil Statutes of Texas, 1925, defines a hotel or inn as "a place where the business is to furnish food and lodging or either, to all who apply and pay therefor /emphasis added/." We have been unable to find any definition of the term "commercial lodging establishment" in the statutes or Appropriation Act. However, in Merchants Red Book Company v. State, 132 Tex. 470, 125 S.W.2d 279 (1939), the Supreme Court considered whether the Merchants Red Book Company constituted a "commercial agency" or "commercial reporting credit agency" within the purview of Article 7061, Revised Civil Statutes of Texas, 1925, which article provided for taxes upon gross receipts of certain businesses therein named. In that case, it was held:

". . . It appears with reasonable certainty that the terms 'mercantile agencies' and 'commercial agencies,' being regarded as synonymous, have for a long time had a definite meaning. See 40 Corpus Juris, p. 636. In the case of City of Brookfield v. Kitchen, 163 Mo. 546, 63 S.W. 825, 826, the Supreme Court of Missouri, speaking of 'commercial or mercantile agencies,' said: 'Such agencies are defined to be establishments which make a business of collecting information relating to the credit, character, responsibility, and reputation of merchants for the purpose of furnishing the information to subscribers, - e.g. R. G. Dun & Co. Agency, Bradstreet Company, etc.

5 Am. & Eng. Enc. Law (1st Ed.) p. 280;
Web. Int. Dict.'

"Corpus Juris gives the following defi-
nition: 'A commercial or mercantile agency
may be defined as a person, firm, or corpor-
ation engaged in the business of collecting
information as to the financial standing,
ability, and credit of persons engaged in
business, and reporting the same to subscrib-
ers or customers applying and paying therefor.'
. . . /emphasis by the Court/

"Technically speaking, it may be that
the Legislature in the original enactment of
Article 7061 had in mind just such agencies.
We are inclined to think, however, that the
question should not be determined solely from
the fact that in one instance the information
furnished pertains to those engaged in busi-
ness, while in the other it pertains only to
customers or purchasers.  It is altogether
probable that a corporation or individual could
engage in the business of collecting at their
own expense information concerning the credit
rating of individual purchasers and customers
and sell this information to retail merchants,
in the form of a red book or by reports, or
both, and build up a large and profitable en-
terprise.  Such a business would then undoubt-
edly take on the character of a 'commercial'
credit reporting agency, such as R.G. Dun &
Co. and other similar agencies undoubtedly
are.  Obviously, such agencies come under the
statute.  We think, however, the situation
here is distinctly different.  This enterprise
is undoubtedly so related to the conduct of
the business of retail merchants as to really
be an indispensable part of same, or an impor-
tant incident thereto.  . . .  Disregarding
technical rules of ownership, it may appro-
priately be said that this business is owned
to as large extent by the subscribers as by
the Chiltons.  Its creation and existence has
been brought about by the cooperation of the
merchants themselves.  We do not think that
the fact that the Chiltons are paid rather
substantially for their services makes this
a 'commercial' enterprise, in the sense of

being one organized and operated for profit
to those who are its sole promoters.  It is
more properly speaking a cooperative enter-
prise between the Merchants Association and
those who act in the capacity of managers,
and for this reason we do not think the Legis-
lature intended to tax a business of this kind."

In view of the foregoing, it is our opinion that the
phrase "commercial hotel, motel, or other commercial lodging
establishment" refers to those persons, firms, corporations,
associations or establishments, engaged in the business of
furnishing lodging to the public generally for pay, and
does not include military installations of either the State
or Federal government, nor does it include educational in-
stitutions or eleemosynary institutions of the State.

In answer to your first question you are therefore
advised that when employees of the Adjutant General's Depart-
ment, while traveling on official business, obtain lodging
at the respective military bases, such employees are entitled
to receive $7 per diem for traveling on State business inside
the boundaries of the State, rather than $12 per diem.  In
answer to your second question, you are advised that when
State employees, while traveling on official business, obtain
lodging at educational or eleemosynary institutions of the
State, such employees are entitled to receive $7 per diem for
traveling inside the boundaries of the, State on State busi-
ness, rather than $12 per diem.

## S U M M A R Y

The phrase "commercial hotel, motel, or
other commercial lodging establishment"
used in subdivision a of Section 15 of
Article V of the General Appropriation
Act of the 59th Legislature, relating to
the rates of allowance for State employees
traveling on State business, refers to
those persons, firms, corporations, asso-
ciations or establishments engaged in the
business of furnishing lodging to the
public generally for pay, and does not

include military installations of either
the State or Federal government nor educa-
tional or eleemosynary institutions of
the State.

Yours very truly,

WAGGONER CARR
Attorney General

By *John Reeves*

John Reeves
Assistant

JR:zt

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Pat Bailey
Paul Phy
Arthur Sandlin

APPROVED FOR THE ATTORNEY GENERAL
BY:  Hawthorne Phillips